Before we begin, I'd like to welcome, as a visiting judge, the Honorable Thomas Klee, Chief Judge of the District Court of Northern West Virginia. Thank you, Judge Klee. Happy to have you here. Appreciate it. Thank you, sir. Our first case is Mosito v. Apple, 2024, 1742. Ms. Reddy, good morning. Good morning, Your Honors. May it please the Court, this case turns on a failure to satisfy a prima facie case of obviousness. The board failed to require that the prior art disclose scannable code with three separate network indications. And the claims require all three of these network indications specifically, user preferred code, provider preferred network, and a selected network separate from those two. But the board found that Easterly discloses all three. And what a reference discloses is a question of fact. And we give deference to the board on that. So if that's what Easterly discloses, doesn't your appeal go south? Your Honor, I disagree that the board found Easterly discloses all three. If you turn to page 30 of the board's opinion, the only place the board discusses its finding about all three is about several lines down, about 17 lines down in that paragraph on appendix 30, where the board says, we agree with petitioner and find that Easterly discloses or suggests a system that would use both a user preferred network and a merchant preferred network as inputs to select a network. But Your Honor, that's not what the claims require. The claims are specific, and they require an indication of all three selected network, all three networks, including an indication of which network the mobile phone is selecting to provide to the merchant system. So Your Honor, I think it's important to look at the specification and the file history, which mandates that the scannable code contain three separate indications. You can see that in figure 5, where there's a user preferred network 503, provider preferred 504, and a selected network 510. Those are separate. And the specification elaborates that in order to get this selected network, the phone makes a decision. And that's shown in figure 2, the determining module 215, which is on the mobile phone. And that is explained in column 7 at appendix 61, lines 57 to 66, which talk about that decision-making process, that logic that's on the mobile phone that says, OK, we've got these networks. Now we're going to select one to tell the merchant server we want to use it. Finally, requires all three, because the prosecution history, this limitation was added. And Mozilla was clear that all three limitations must be provided. Now you mentioned that the court found all three, and I disagree. I want to go back to that page 30, because I think there's some other points that need to be made. And looking at page 30, about three lines down, it says that petitioner's assertion that the selected network is taught or suggested by Easterly's disclosure that the barcode designates particular accounts through which a transaction may be settled, and identifies a specific route to settle the transaction. Again, that specific route from Easterly is in paragraph 124. It's only referred to in paragraph 124, and it is specific to the customer profile. So that specific route is the route that is the customer-preferred route, not the route that is This is obviousness rather than anticipation, right? Yes, Your Honor. So isn't there certain expectations that the choice might be obvious? If I understand your question, Your Honor, you're saying that it might be obvious to select between the two routes. And Your Honor, I disagree, because first of all, that selection process was done at the merchant server and not at the phone. So to move that to the phone, in addition to requiring multiple different indications of a network, would not be obvious. Because why would you have multiple indications, and then a selection of one of those indications that identifies the same indications, and then to send that on to the server who's going to make that determination in the final? And in addition, Your Honor, it's not appropriate to find obviousness where there's a missing limitation. And that's the Becton-Dickton case, Your Honor. And in that case, there were four limitations, and the board condensed them into three. Here, the board does the same thing. It takes the selected route. I'm sorry. It takes the selected network and the customer network and it combines them into one. And you can see that, because a good place to look for that would be, for example, in Appellee Apple's demonstratives. And we put that in our reply brief at page, I think, six. In their demonstratives, they identify the customer preferred network and the alleged selected network with the same evidence, the very same evidence coming out of paragraph 124 of Easterly. If you look at that in comparison on page six of our reply brief, it's the same paragraph and the same language is highlighted. For the user preferred network, it's the specific route. And for the selected network, it's the same specific route. That is a violation of the Prima Fascia case. And you can't solve that by simply saying, oh, it would have been obvious to add another route. And for that reason, Your Honor, this case should be reversed. Additionally, Your Honor, I think, because you were concerned about whether you can say that this would have been obvious to add this third selected route, it's important to look at how Appell's expert described it. Appell's expert says, in his paragraphs, which are 109 to 113, repeatedly, he refers to both networks. And he doesn't identify a specific indication of a selected network as required by the claims. In paragraph 112, he said it would be obvious for the selected network to be the same as the preferred network. But that's not what the claims require. In fact, the selected network could be the same network as the preferred network. But the selected network is a different field in the mobile phone saying we've got a preferred network, we've got a merchant network, and now the mobile phone's going to give you a preference of which one to use. So it can be the same network, but there has to be a field in the code that says, hey, use this one over that one. Additionally, at paragraph 113 of the declaration, he improperly equates easterly specific route with the selected network. But if you compare 113 at 895 of the record to appendix 833, paragraph 94, he's attributing that same language, the specific route, to the user preferred network. You can't do both. In addition, 109 through 110 talk about the decision making being at the server in easterly. And that's actually the prior art. That's where it was. It was at the server. It doesn't talk about the decision being made, an indication being made at the mobile phone. So because this limitation is missing, the obviousness analysis legally fails. But in addition, because the same evidence is relied upon for both the user preferred network and the selected network, easterly's specific route of 124, there's no substantial evidence. And this case should be reversed. Your Honors, I'm happy to talk about the APA issue. But if you have questions, I'll reserve my time. And we will save it for you. Mr. Davis. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. As this Court recognized, this is a substantial evidence review. This is an issue of fact. Substantial evidence supports the Board's findings that easterly discloses and, at minimum, renders obvious a barcode containing all three recited networks. This Court should affirm the findings below. Now, there's no dispute between the parties or at the Board that all three pieces of information, all three claimed networks, need to be part of the scalable code. And there also doesn't appear to be any dispute on appeal that the user-preferred network and the provider-preferred network are included as part of that barcode. The only dispute is whether the selected network is also included. And there, the Board found not only that it was expressly disclosed by easterly, citing, for example, the paragraph 28 of the easterly reference, but also that it was obvious in light of Dr. Henry Hu, Apple's expert's  I'll start first with the issue of express disclosure. The Board relies, in particular, on paragraph 28 of Appendix 952 of the easterly reference, where it says the 2D barcode has encoded detailed information concerning the transaction, which may include designating particular accounts through which a transaction may be settled. The Board cites to it a number of other paragraphs as well, some of which are relied on for additional elements as well, Your Honor. But the express teachings of easterly are that the designated accounts through which to clear the transaction, which supplies substantial evidence for the Board's finding that the selected network is included as part of the barcode. The Board recognizes that at Appendix 30. And it starts off with, we agree with petitioner's arguments. Adopting petitioner's arguments, this is expressly disclosed in the easterly reference. And not only that it's expressly disclosed, but also crediting the testimony of Dr. Henry Hu, Apple's expert. In particular, his paragraphs 109 to 111. And that's at Appendix 893, 895, where Dr. Hu distinguishes between the different networks and says it would be beneficial to include the merchant and user preferences along with the selected network in the barcode. And he goes on to explain why that is, supporting his opinions with further evidence. And he explains that so that if the transaction over the selected network fails, or the debit network is otherwise unavailable, a new selected network can be determined based on those preferences. And he goes on to further support that in the following paragraphs as well, distinguishing and providing substantial evidence support for the Board's findings that not only was this limitation disclosed, but was also obvious. Unless the court has any further questions, I'll see the remainder of my time and we ask that this court adjourn. Thank you, counsel. As we said before, no one loses points by not using up all their time. Ms. Addy. Thank you, Your Honor. First of all, if you turn to paragraph 28, it says, designating particular accounts through which the transaction may be settled. Those are, again, customer preferences. If you have to have all three, which we do, the particular accounts are the customer's preference for the account. And that relates also to 124, which specifically says that the customer's profile may include preferences, such as the specific route to settle the transaction. So we've got a customer-preferred route included in Easterly. We've got a merchant-preferred route included in Easterly. There is no disclosure of the third selected indication. And why would that be obvious? Because it's not because you need redundancy, because you already have it. You already have the customer-selected route and the merchant-selected route. If you turn to house declaration that my colleague looked at, at paragraph 109, he relies on. And while it does say a PECETA would have recognized it as beneficial to include merchant and user preferences along with a selected network in the barcode, he doesn't support that. He does say at the end, however, of paragraph 109, by providing the merchant system with both the user preferences and the merchant preferences through the barcode, and this is important, the merchant system can apply a set of rules with those preferences to identify the new selected network. And finally, 110, that my co-counsel relied upon, says applying a set of rules with both the merchant and the user preferences identify a new processing route. Indeed, Easterly describes the server also. Let me read that again. Indeed, Easterly describes how the server, so we're talking about the client server, the customer, sorry, we're talking about the merchant server. Easterly describes how the server also contains routing preferences and tables, which allow the transaction to be routed to the external network. Again, he's only talking about two networks, not three. If you have no more questions, Your Honors, this case should be reversed, because it's missing a limitation and because there is no motivation to add the selected network that's entirely missing. Thank you, Ms. Addy. Thank you to both counsel. The case is submitted.